UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | March 23, 2023 |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Patricia Kim | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT ROB BONTA'S MOTION TO DISMISS COMPLAINT (DKT. 24); ENGINEERS AND ARCHITECTS ASSOCIATION'S MOTION TO DISMISS (DKT. 28); AND MOTION OF DEFENDANT CITY OF LOS ANGELES TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM (DKT. 30)**

**I.     Introduction**

On May 12, 2021, Camille Bourque and Peter Morejon (collectively, "Plaintiffs") filed the present action asserting claims pursuant to 42 U.S.C. § 1983. Dkt. 1 ("Complaint"). The Complaint named as defendants the Engineers and Architects Association (the "EAA"), the City of Los Angeles (the "City"), and California Attorney General Rob Bonta (the "Attorney General") (collectively, "Defendants"). *Id.* at 1. The allegations in the Complaint arise from disputes concerning deductions from Plaintiffs' paychecks that were transferred to EAA. Plaintiffs allege that, because the deducted amounts became a part of funds used to make various political statements with which they disagreed, the deduction actions violated their First Amendment rights.

On August 2, 2021, the Attorney General filed a Motion to Dismiss Complaint. Dkt. 24. On August 3, 2021, EAA and the City, respectively, filed motions to dismiss. Dkts. 28, 30 (together, with Dkt. 24, the "Motions"). On August 23, 2021, Plaintiffs filed an Opposition to Defendants' Motions to Dismiss. Dkt. 33 (the "Opposition").

On September 3, 2021, the City filed a Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss. Dkt. 34. On September 7, 2021, EAA and the Attorney General, respectively, filed replies to the Plaintiffs' Opposition. Dkts. 35, 36 (together, with Dkt. 34, the "Replies").

A hearing on the Motions was held on March 28, 2022, and they were taken under submission. For the reasons stated in this Order, the Motions are **GRANTED**.

**II.    Background**

    A.     Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

It is alleged that Camille Bourque ("Bourque") is employed as a Principal Fingerprint ID Expert II for the Los Angeles Police Department. Complaint ¶ 5. It is alleged that she has been employed in that capacity for more than 22 years. *Id.* It is alleged that Peter Morejon ("Morejon") is employed as an Airport Superintendent of Operations III for the City. *Id.* ¶ 6. It is alleged that he has been employed in that capacity for more than 29 years. *Id.*

It is alleged that EAA is a "recognized employee organization" pursuant to Cal. Gov't Code § 3501(b) that is headquartered in Los Angeles. *Id.* ¶ 7. It is alleged that EAA "is empowered to represent whether employees have affirmatively consented to have deductions withdrawn from their lawfully earned wages." *Id.*

It is alleged that the City is a "public agency" pursuant to Cal. Gov't Code § 3501(c). *Id.* ¶ 8. It is alleged that the City "is responsible for deducting dues from public employee's wages and remitting the dues to EAA, based on EAA's representation of whether employees have affirmatively consented to have deductions withdrawn from their lawfully earned wages." *Id.*

It is alleged that the Attorney General is "sued in his official capacity as the representative of the State of California charged with the enforcement of state laws, including the provisions challenged in this case." *Id.* ¶ 9.

    B.    Substantive Allegations

        1.    Allegations Concerning Plaintiff Bourque

It is alleged that Bourque began working for Defendant City in 1999. *Id.* ¶ 10. It is alleged that Bourque never joined Defendant EAA, and neither signed a membership card nor otherwise authorized the City to deduct money from her wages for use by the EAA. *Id.* It is alleged that, beginning in September 2003, the City began deducting amounts from Bourque's wages, which were remitted to EAA. *Id.* ¶ 11. It is alleged that Bourque "did not contest the unauthorized deductions" between 2003 and February 2020. *Id.* ¶¶ 13-16.

It is alleged that in late 2019, EAA "sent a solicitation to members regarding joining a political committee to advise EAA on donations for political candidates and causes." *Id.* ¶ 14. It is alleged that Bourque disagreed with this activity and, on February 1, 2020, sent a letter to EAA "stating that she does not affirmatively consent to the continued withdrawal of her . . . wages." *Id.* ¶ 16. It is alleged that the letter demanded that EAA "immediately cease deducting all dues, fees, and political contributions." *Id.* It is alleged that the EAA continued to deduct money from Bourque's wages after she sent the letter. *Id.* ¶ 20.

It is then alleged that, in June 2020, Bourque spoke to an EAA representative by telephone, "who referred her to a maintenance of membership provision clause contained in the MOU between Bourque's EAA bargaining unit and the City." *Id.* ¶ 21. It is alleged that the clause applies to employees who "have authorized Union dues deductions" and further provides that "employees who wish to rescind that authorization are bound to continue paying the union until 'the first full payroll period that begins the period commencing ninety (90) days before the employee's anniversary date in the final year of the MOU.'" *Id.* ¶ 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

It is further alleged that the City and EAA continue to take $41.80 from Plaintiff Bourque's bi-weekly paychecks "without her consent and against her express objection." *Id.* ¶ 26. It is alleged that between June 2018 and April 2021, the City and EAA deducted approximately $2842.40 from Bourque's wages "without her affirmative consent and against her express objection." *Id.* ¶ 27. It is also alleged that the money was used by EAA "to fund political speech with which Bourque does not agree." *Id.* ¶ 28.

The Complaint also alleges that, when it was filed, EAA had not acknowledged Bourque's letter. *Id.* ¶¶ 17-18. It is alleged that the deductions from her wages "continue without her affirmative consent." *Id.* ¶ 19.

        2.        Allegations Concerning Morejon

It is alleged that Morejon began his employment with the City in 1992. *Id.* ¶ 29. It is alleged that from 1992 to 2005, Morejon paid agency fees to EAA as a non-member. *Id.* ¶¶ 20-30. It is alleged that in 2005, Morejon joined EAA "by signing a membership card and dues authorization." *Id.* ¶ 30. It is alleged that the membership card "formed an 'at-will' association between Morejon and EAA, and Morejon was free to end that association at any time without condition." *Id.* ¶ 31.

It is alleged that in 2020, Morejon received political literature from EAA that included public statements with which he disagreed. *Id.* ¶¶ 32-33. It is alleged that, on October 5, 2020, Morejon "sent a letter resigning his union membership and revoking his authorization to deduct union dues from his lawfully earned wages." *Id.* ¶ 34.

It is alleged that EAA did not acknowledge its receipt of the letter, which led Morejon to call EAA to inquire about the status of his membership and the continued withdrawal of wages by Defendant City "for EAA purposes." *Id.* ¶¶ 36-37. It is alleged that Morejon spoke with someone at EAA several times, but learned only "that his letter was on the desk of EAA director, Steven Belhumeur." *Id.* ¶¶ 38-43.

It is further alleged that despite these efforts, the City and EAA continued to deduct "$58.00 from Morejon's bi-weekly paychecks without his consent and against his express objection." *Id.* ¶ 47. It is alleged that, between October 2020 and January 2021, "when the deductions finally ceased," Defendants City and EAA deducted approximately $464 from Morejon's wages without his consent. *Id.* ¶ 48.

        3.        Causes of Action

The three causes of action all arise under 42 U.S.C. § 1983. The First Cause of Action alleges that Defendants acted under color of law to seize portions of Plaintiffs' wages for use in EAA's political speech, in violation of Plaintiffs' First Amendment rights against compelled speech. *Id.* ¶¶ 57-67.

The Second Cause of Action alleges that "Defendants' scheme for the seizure of dues for use in EAA's political speech does not include any procedural protections sufficient to meet the requirements of the Due Process Clause." *Id.* ¶ 72. It is alleged that Defendants' actions did not properly safeguard Plaintiffs' First Amendment and property interests in violation of Plaintiffs' procedural due process rights. *Id.* ¶¶ 72-77.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV21-04006 JAK (PVCx) | Date |
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | |

The Third Cause of Action alleges that "Defendants' scheme under Cal. Gov't Code § 1157.12 . . . has the purpose and effect of arbitrarily burdening Plaintiffs' ability to exercise their First Amendment rights," which denies "Plaintiffs their substantive due process rights." *Id.* ¶¶ 88-90. Section 1157.12 provides:

> Public employers other than the state that provide for the administration of payroll deductions authorized by employees for employee organizations as set forth in Sections 1152 and 1157.3 or pursuant to other public employee labor relations statutes, shall:
>
> (a) Rely on a certification from any employee organization requesting a deduction or reduction that they have and will maintain an authorization, signed by the individual from whose salary or wages the deduction or reduction is to be made. An employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to provide a copy of an individual authorization to the public employer unless a dispute arises about the existence or terms of the authorization. The employee organization shall indemnify the public employer for any claims made by the employee for deductions made in reliance on that certification.
>
> (b) Direct employee requests to cancel or change deductions for employee organizations to the employee organization, rather than to the public employer. The public employer shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the public employer for any claims made by the employee for deductions made in reliance on that information. Deductions may be revoked only pursuant to the terms of the employee's written authorization.

Cal. Gov't Code § 1157.12.

        4.      Relief Sought

Plaintiffs seek three forms of relief. *First*, they seek a declaratory judgment as to the following: (1) Defendants' actions in deducting Plaintiffs' wages without their affirmative consent violated the First Amendment; (2) Defendants' failure to provide Plaintiffs prior notice and an opportunity to dispute the wage deductions violated their rights to procedural due process under the Fourteenth Amendment; and (3) Defendants' scheme requiring Plaintiffs to "direct their membership and dues authorization termination requests to a third-party union with a direct financial incentive to continue dues deductions" violated their substantive due process rights under the Fourteenth Amendment. Complaint at 15-16.

*Second*, they seek the entry of an injunction that provides the following relief: (1) Defendants shall not seize wages from "Plaintiffs and public employees" without their affirmative consent; (2) Defendants shall adopt adequate procedures to confirm that public employees have affirmatively consented to deductions from their wages; and (3) the City shall adopt a process by which it must directly confirm the affirmative consent of a public employee prior to any deduction from wages. *Id.* at 16.

*Third*, Plaintiffs seek compensatory damages. Bourque seeks $2,842.40, plus accrued interest, for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

amounts deducted from her wages without her affirmative consent. *Id.* at 16. Morejon seeks approximately $464, plus accrued interest, for the amounts deducted from his wages without his affirmative consent. *Id.* at 17. Further, Plaintiffs seek compensatory damages "for the violation of their First Amendment rights against compelled speech, and of Due Process rights." *Id.* Plaintiffs also seek nominal damages for the violation of their rights under the First and Fourteenth Amendments, as well as an award of attorney's fees and costs. *Id.*

III.    **Analysis**

    A.    Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

A party may move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Additionally, Fed. R. Civ. P. 12(b)(1) provides that a party may assert as a defense the court's lack of subject-matter jurisdiction. The Ninth Circuit has determined that "[a]lthough sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015); *see Sato v. Orange Cnty. Dept. of Educ.*, 861 F.3d 923, 927 n.2. (9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion.").

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While this policy is to be applied "with extreme liberality," courts have routinely found that amendment is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where amendment would be futile. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

    B.    Application

        1.    Plaintiff Morejon's Claims Against Defendant Attorney General and for Prospective Relief

            a)    Claims Against Defendant Attorney General

                (1)    <u>Eleventh Amendment Immunity</u>

"[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting states." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). The Eleventh Amendment precludes actions in which a party seeks either damages or injunctive relief "against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (per curiam) (quoting *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422-23 (9th Cir. 1991)). Congress may limit this immunity, but only through Section 5 of the Fourteenth Amendment and only where there is a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Kimel*, 528 U.S. at 81-82 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)).

*Ex Parte Young*, 209 U.S. 123 (1908), determined that there were certain limitations on these restrictions. Thus, "the Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citing *Ex Parte Young,* 209 U.S. at 155-56). Pursuant to *Ex Parte Young*, "the state officer sued 'must have some connection with the enforcement of the [allegedly unconstitutional] act.'" *Id.* (quoting *Ex Parte Young*, 209 U.S. at 157). "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.* To determine whether *Ex Parte Young* applies, a court must conduct "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Semerjyan v. Service Emp.'s Int'l Union Loc. 2015*, 489 F. Supp. 3d 1048, 1055 (C.D. Cal. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

The Complaint alleges that the deductions from Morejon's wages ended in January 2021. Complaint ¶ 48. Thus, as in *Semerjyan*, "the Complaint's factual allegations establish that there is *no* ongoing violation" as to Morejon. 489 F. Supp. 3d at 1056. A straightforward review of the Complaint "shows that there is no ongoing violation, so the *Ex parte Young* exception does not apply, and Plaintiff's § 1983 claims against the [Attorney General] are barred by Eleventh Amendment immunity." *Id.*

The Attorney General's Motion to Dismiss Complaint is **GRANTED** as to Morejon's claims.

            b)    Standing for Prospective Relief

For substantially the same reasons, EAA and the City argue that Morejon lacks standing to seek prospective relief. Dkt. 30 at 13-15; Dkt. 28-1 at 29.

The Complaint alleges that that the deductions from Morejon's wages ended in January 2021.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

Complaint ¶ 48. EAA has also established that Morejon was removed from the union member list before the Complaint was filed. *See* Declaration of Marleen Fonseca, Dkt. 28-2 ¶ 13 ("Fonseca Decl."); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."); *see Stoia v. Yee*, No. 2:20-cv-01760-KJM-DMC, 2021 WL 3847725, at *2-3 (E.D. Cal. Aug. 27, 2021) (citing *Safe Air for Everyone* and concluding that a declaration from the union's "Member Services Director" was properly considered in determining whether plaintiffs had standing); *Hubbard v. SEIU Loc. 2015*, 552 F. Supp. 3d 955, 959 (E.D. Cal. 2021) (same).

Further, there is no plausible suggestion that Morejon would be subject to unlawful wage deductions in the future. *See* Dkt. 33 at 38 ("Plaintiffs' claims for prospective relief are likely moot due to the fact that they are no longer members of EAA, [and] are unlikely to rejoin in the near future . . . ."); *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1119–20 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 749 (2023) (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 410 (2013)) ("[T]he sole basis for [Wright's] impending injury is her fear that, should she return to work, SEIU will forge a new membership agreement. . . . Wright's fear . . . rests on a 'highly attenuated chain' of inferences in which independent actors must act in a certain manner to target her specifically."); *Semerjyan*, 489 F. Supp. 3d at 1059-60 ("Plaintiff argues that the Union 'could easily reinstate [her] dues deductions without authorization,' . . . but this is pure speculation."); *Yates v. Wash. Fed'n of State Emps.*, 466 F. Supp. 3d 1197, 1205 (W.D. Wash. 2020) ("Yates presents no evidence to contradict WFSE's showing that its procedures make unauthorized withdrawals very unlikely, especially in Yates's case. The fact that Yates encountered an isolated instance of misconduct or error in the past does not mean she is at heightened risk of another similar experience."); *Stoia v. Yee*, No. 2:20-cv-01760-KJM-DMC, 2021 WL 3847725, at *2 (E.D. Cal. Aug. 27, 2021), *appeal dismissed*, No. 21-16597, 2022 WL 4564130 (9th Cir. Apr. 29, 2022) ("Here, the challenged deductions stopped before this lawsuit began, and plaintiffs have not alleged or shown any future violations are more than just a possibility.").

For these reasons, Morejon "has not alleged any facts [from] which a threat of future injury could be reasonably inferred." *Semerjyan*, 489 F. Supp. 3d at 1059; *see Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct."). Because the voluntary cessation and capable-of-repetition-yet-evading-review exceptions to mootness do not apply in the context of standing, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190-91 (2000), Morejon's claims for prospective relief must be dismissed. *See Davis*, 554 U.S. at 734 ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (citation and internal quotation marks omitted)).

For the foregoing reasons, EAA's Motion to Dismiss and the City's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim are **GRANTED** as to Morejon's claims for prospective relief.[1]

        2.      Bourque's Claims Against Defendant Attorney General

---

[1] Declaratory relief is prospective. *See Mayfield v. U.S.*, 599 F.3d 964, 969 (9th Cir. 2010) ("Thus, a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV21-04006 JAK (PVCx) | Date |
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | |

As explained above, under *Ex Parte Young*, "the state officer sued 'must have some connection with the enforcement of the [allegedly unconstitutional] act.'" *L.A. Cnty. Bar Ass'n*, 979 F.2d at 704 (quoting *Ex Parte Young*, 209 U.S. at 157). "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.*

The sole allegation in the Complaint concerning the Attorney General is that he "is sued in his official capacity as the representative of the State of California charged with the enforcement of state laws, including the provisions challenged in this case." Compl. ¶ 9. This is insufficient to establish a "fairly direct" connection between the Attorney General and the claims because a "generalized duty to enforce state law . . . will not subject an official to suit." *L.A. Cnty. Bar Ass'n*, 979 F.2d at 704.

Neither response by Bourque is persuasive. The first is that the "entire system by which the City and EAA jointly act to deprive employees like Bourque and Morejon of their First and Fourteenth Amendment rights occurs under the exclusive authority of state law and is defended and enabled by the Attorney General." Dkt. 33 at 30. This allegation does not appear in the Complaint. However, even if the Complaint were amended to include it, the outcome would not change; this assertion is not more than one as to a "generalized duty to enforce state law." *L.A. Cnty. Bar Ass'n*, 979 F.2d at 704.

The second response is a citation to Cal. Gov't Code § 12511, which provides: "The Attorney General has charge, as attorney, of all legal matters in which the State is interested . . . ." For the same reasons, this is insufficient to establish a direct connection between the Attorney General and the alleged violations of Cal. Gov't Code § 1157.12. *See* Cal. Gov't Code § 1157.12 ("Public employers other than the state that provide for the administration of payroll deductions authorized by employees for employee organizations . . . shall: . . . .").

Because Bourque has failed to show a "fairly direct" connection between the Attorney General and Cal. Gov't Code § 1157.12, these claims are precluded by the Eleventh Amendment. *Cf. Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) ("Governor Brown is entitled to Eleventh Amendment immunity because his only connection to § 25982 is his general duty to enforce California law."); *Bolbol v. Brown*, 120 F. Supp. 3d 1010, 1019 (N.D. Cal. 2015) ("Here, Section 527.8 does not empower district attorneys to enforce the law, and accordingly the Attorney General's enforcement power is limited to her general duty to enforce California law. Because such a general duty is insufficient under *Ex parte Young*, the Eleventh Amendment bars plaintiffs' claims against the Attorney General.")

For the foregoing reasons, Bourque's claims against the Attorney General fail. The Attorney General's Motion to Dismiss Complaint is **GRANTED** as to Bourque's claims.

        3.     Plaintiffs' Claims Against Defendants EAA and City

            a)     Mootness

                (1)    <u>Prospective Relief</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

EAA and the City argue that Plaintiffs' claims for prospective relief are moot. As explained above, Morejon lacks standing to pursue prospective relief. For similar reasons, Bourque's claims for prospective relief are moot.

In support of its Motion to Dismiss, EAA submitted a declaration from Marleen Fonseca, who is the current Executive Director of EAA and has served in that role since March 15, 2021. Fonseca Decl. ¶ 2. Fonseca declares that EAA receives regular reports from the City that include the name of each employee who is a member of EAA, and the amount of dues that has been deducted from each employee's pay check and transferred to EAA during the time period stated in the report. *Id.* ¶ 8. Fonseca declares that she generated reports from this database for Plaintiffs. *Id.* ¶ 9. Fonseca declares that EAA notified the City on May 22, 2021, that Bourque was no longer a member of the union "by providing her name on the cancellation list." *Id.* ¶ 14. Fonseca further declares that the City stopped deducting dues from Bourque's paychecks "beginning with her paycheck for the May 9 – May 22 pay period." *Id.*

Fonseca next declares that the report concerning Bourque shows that the City withdrew a total of $2479.06 from her paychecks for the period between June 27, 2018, and August 2, 2021. *Id.* ¶ 10. Fonseca declares that on May 29, 2021, she sent a letter and a refund check in the amount of $2850 to Bourque by certified mail. *Id.* ¶ 15. The "check was equal to more than $2,479.06 plus simple interest at 10 percent per annum (or constantly compounding interest at 9 percent per annum) plus $1.00 in nominal damages." *Id.* ¶ 15. The proffered payment was provided without any conditions. Fonseca also attached to the declaration a copy of the letter sent to Bourque. Dkt. 28-2 at 12.

Bourque concedes that "Plaintiffs' claims for prospective relief are likely moot due to the fact that they are no longer members of EAA, are unlikely to rejoin in the near future, and are no longer having dues deducted from their lawfully earned wages by the City for EAA's political speech." Dkt. 33 at 38. However, Bourque argues that "several exceptions to mootness are directly on point and authorize this Court to assert jurisdiction and allow [her] claims for prospective relief to proceed." *Id.*

*First*, Plaintiff Bourque contends that her claims for prospective relief may proceed pursuant to the capable of repetition yet evading review exception to mootness. *Id.* The exception is "limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Several other district courts in this Circuit have rejected the proposed application of this rule in the context of factual circumstances that parallel those presented here. *See, e.g.*, *Few v. United Tchr.'s L.A.*, No. 2:18-cv-09531-JLS-DFM, 2020 WL 633598, at *5 (C.D. Cal. Feb. 10, 2020) (determining the "capable of repetition, yet evading review" doctrine did not apply where Plaintiff was "no longer a UTLA member, all dues deductions have ended, and there is no plausible likelihood that dues deductions will recur"), *aff'd*, 2022 WL 260023 (9th Cir. Jan. 27, 2022); *Durst v. Or. Educ. Ass'n*, 450 F. Supp. 3d 1085, 1088 (D. Or. 2020) (doctrine does not apply where "there is no reasonable expectation that Plaintiffs will be subject to any involuntary deductions going forward"). There is no such reasonable expectation here. *See, e.g.*, *Stroeder v. Serv. Empls. Int'l Union*, No. 3:19-cv-01181-HZ, 2019 WL 6719481, at *3 (D. Or. Dec. 6, 2019) ("The Court cannot find a reasonable expectation that Plaintiff will be subjected to the challenged action again. . . . Plaintiff is no longer a union member, her dues authorization is no longer in effect, and dues are no longer being deducted from her paychecks.");

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

*Durst*, 450 F. Supp. 3d at 1088 ("In other words, there is no reasonable expectation that Plaintiffs will be subject to any involuntary deductions going forward.").

In response, Bourque relies on *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011), which was a class action proceeding, and argues that the present action cannot be deemed moot because Plaintiffs have not had an opportunity to seek class certification. The standard for determining mootness differs in the class action context, because the claims of some putative class members may not be moot. In contrast, "[w]here no class action has been instituted, the capable of repetition doctrine is applied only in exceptional situations where the plaintiff can reasonably show that *he will again* be subject to the same injury." *Sample v. Johnson*, 771 F.2d 1335, 1339 (9th Cir. 1985) (emphasis added). Bourque has failed to show that she is likely to be subject to the same injury, and the Complaint does not refer to Fed. R. Civ. P. 23 or otherwise allege any class claims. Therefore, Bourque's reliance on *Pitts* and the rules of mootness in class action proceedings is not persuasive. *See Few*, 2020 WL 633598, at *5 ("Thus, because Few has not brought a putative class action, his claim is non-justiciable."); *Stroeder*, 2019 WL 6719481, at *3 ("Here, there is no putative class action."); *Grossman v. Hawaii Gov't Empls. Ass'n/AFSCME Loc. 152*, 611 F. Supp. 3d 1033, 1050 (D. Haw. 2020) ("This case differs because Grossman did not file her complaint as a class action, and she never sought to certify this case as a class action at any point in this litigation.").[2]

*Second*, Bourque argues that the voluntary cessation exception to mootness applies to her claims for prospective relief. Again, other district courts in this Circuit have rejected similar arguments. *See, e.g.*, *Aliser v. SEIU Cal.*, 419 F. Supp. 3d 1161, 1166 (N.D. Cal. 2019) ("[F]or the allegedly wrongful conduct to recur with respect to the plaintiffs, they would need to become union members again, which is "a remote possibility." (citation omitted)); *Few*, 2020 WL 633598, at *5 ("[V]oluntary cessation of challenged activity still yields mootness where, as here, it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (citation omitted)); *Grossman*, 611 F. Supp. 3d at 1048 ("As with Grossman's voluntary cessation theory, the fatal defect here is the fact that there is no "reasonable expectation that [Grossman] [will] be subject to [the terms of Act 7] again." (alterations in original) (citation omitted)); *Durst*, 450 F. Supp. 3d at 1088-89 (similar). This analysis applies here. Through the Fonseca Declaration, Defendants have established "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190; *see also* Dkt. 33 at 38 ("Plaintiffs[] . . . are unlikely to rejoin [EAA] in the near future . . . .").

For the foregoing reasons, Bourque's claims for prospective relief, including declaratory relief, are **MOOT**. Because Morejon lacks standing to seek prospective relief, and Bourque's claims for prospective relief are moot, EAA's Motion to Dismiss and the City's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim are **GRANTED** as to those claims.

(2) <u>Retrospective Relief</u>

EAA and City also argue that Plaintiffs' claims for retrospective relief are moot. Dkt. 28 at 10, 29-30; Dkt. 30 at 8, 11-12. They contend that Plaintiffs have received refunds of the total amounts deducted from their wages as alleged in the Complaint, and corresponding interest. Thus, each negotiated the

---

[2] Plaintiffs also "seek leave to amend their complaint to seek class certification on behalf of other City employees whose lawfully earned wages are currently being taken and spent on political speech by EAA without their affirmative consent." Dkt. 33 at 42. Plaintiffs' request for leave to amend is addressed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

checks sent to him or her by EAA. Plaintiffs do not dispute that they received and negotiated the checks, but argue that the "checks did not furnish the full scope of relief sought." *See* Dkt. 33 at 13-14. Plaintiffs also contend that the exceptions to mootness apply.

Plaintiffs' claims for compensatory damages in the amount deducted from their wages are moot. The undisputed facts offered by Defendants establish that Plaintiffs were provided the compensatory damages they seek, including interest, without condition. *See, e.g.*, *Jackson v. Napolitano*, No. 19cv1427-LAB (AHG), 2020 WL 5709284, at *4-6 (S.D. Cal. Sept. 23, 2020) (because "the Union fully refunded all dues Plaintiffs paid to it[,] . . . with interest," the "claim for a refund of their withheld union dues is moot"); *Durst*, 450 F. Supp. 3d at 1088 ("Plaintiffs' claim for compensatory damages is also moot as Defendants provided Plaintiffs with all of the compensatory damages sought in the form of checks sent to Plaintiffs' attorney."); *Molina v. Penn. Soc. Serv. Union*, 392 F. Supp. 3d 469, 482 (M.D. Pa. 2019) ("The Court also concludes that dismissal of Plaintiff's claims for retrospective monetary relief in the form of post-resignation due payments is proper because Plaintiff's claim has been rendered moot by the refund provided by Defendants."); *Mayer v. Wallingford-Swarthmore Sch. Dist.*, 405 F. Supp. 3d 637, 642 (E.D. Pa. 2019) ("In this case, however, there are no compensatory damages to be awarded: Plaintiff has received a refund for the dues that were paid after he resigned from the Union, and his actual injury therefore has been redressed."). Further, for the same reasons stated above, none of the exceptions to mootness applies.

For the foregoing reasons, Plaintiffs' claims for compensatory damages in the amount of the wages deducted from their paychecks is **MOOT**. Therefore, EAA's Motion to Dismiss and the City's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim are **GRANTED** as to those claims for relief.

### b) Failure to State a Claim

Plaintiffs also seek an award of "compensatory damages for the violation of their First Amendment rights against compelled speech, and of Due Process rights, in an amount to be determined at trial." Dkt. 1 at 17. As explained below, the Complaint fails to state a claim for a violation of Plaintiffs' First Amendment or due process rights because Plaintiffs' alleged harm was not based on state action and the Complaint fails to allege a *Monell* claim.

### (1) Claims Against Defendant EAA

The first issue is whether Plaintiffs' claims, which arise under § 1983, allege conduct that constitutes "state action." Dkt. 28 at 15. To assess when "governmental involvement in private action" rises to this level, *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982), adopted a two-prong framework. *See Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013). "The first prong asks whether the claimed constitutional deprivation resulted from 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible.' []The second prong determines whether the party charged with the deprivation could be described in all fairness as a state actor." *Id.* (citing *Lugar*, 457 U.S. at 937). A state actor is an actor "for whom a domestic governmental entity is in some sense responsible." *Id.* at 995.

Plaintiffs allege that EAA "acted under color of state law and pursuant to Cal. Gov't Code § 1157.12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

and the applicable MOUs to seize Plaintiffs' wages without their affirmative consent and against their express objection for use in EAA's political speech." Complaint ¶ 59; *see id.* ¶ 90 ("Pursuant to state law, Cal. Gov't Code § 1157.12 and the applicable MOUs, EAA jointly acted with the City to deny Plaintiffs' their substantive due process rights.").

EAA's alleged conduct does not satisfy the first *Lugar* prong. Plaintiffs' alleged harm arises from wage deductions that occurred "without the employees' voluntary and informed affirmative waiver" of their right to avoid union dues. Complaint ¶¶ 58, 73, 86-87. Under California law, "employee organizations," including unions, may request that public employers deduct dues from the salaries and wages of their members. Cal. Gov't Code § 1152. The public employer is required to rely on a certification from the employee organization that each member-employee has authorized such deductions. Cal. Gov't Code § 1157.12 ("Public employers . . . shall: (a) Rely on a certification from any employee organization requesting a deduction or reduction that they have and will maintain an authorization . . . ."). An employee's request to "cancel or change deductions" must be submitted to the employee organization, not the public employer. *Id.* ("("Public employers . . . shall: . . . (b) Direct employee requests to cancel or change deductions for employee organizations to the employee organization, rather than to the public employer. The public employer shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed . . . .").

The California statutes that apply to the deduction of union dues from the paychecks of public employees are substantially similar to those in Washington that were reviewed in *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020). In *Belgau*, the "gist of the [e]mployees' claim against the union [was] that it acted in concert with the state by authorizing deductions without proper consent in violation of the First Amendment." *Id.* at 946. The Ninth Circuit concluded that the plaintiffs failed to allege the first prong of the *Lugar* test because the "claimed constitutional harm is that the agreements were signed without a constitutional waiver of rights. Thus, the 'source of the alleged constitutional harm' is not a state statute or policy but the particular private agreement between the union and [e]mployees." *Id.* at 947 (quoting *Ohno*, 723 F.3d at 994). In an opinion that issued after the hearing on the Motions, the Ninth Circuit addressed a claim by a former Oregon state employee regarding the alleged unauthorized deduction of union dues from her wages pursuant to Oregon statutes similar to those at issue here. *See Wright*, 48 F.4th at 1121-25. Citing *Belgau*, *Wright* rejected the plaintiff's claims. It held that the alleged forgery by a union of the plaintiff's dues authorization agreement could not support constitutional claims against the union because this conduct did not constitute state action. *Id.*

The same analysis applies here. Plaintiffs' alleged harm arises from EAA's alleged failure to notify the City that Plaintiffs had not affirmatively consented to any future wage deductions. Complaint ¶¶ 16-28, 34-49. Thus, because the cause of Plaintiffs' harm was the alleged misrepresentation or fraud by EAA, not a state statute or policy, Plaintiffs fail to satisfy the first *Lugar* prong. *See Belgau*, 975 F.3d at 946-47. Other district courts in California have reached the same conclusion. *See, e.g.*, *Espinoza v. Union of Am. Physicians & Dentists, AFSCME Loc. 206*, 562 F. Supp. 3d 904, 912, (C.D. Cal. 2022) ("To the extent that UAPD's deductions were unlawful, 'private misuse of a state statute does not describe conduct that can be attributed to the State.'" (quoting *Collins v. Womancare*, 878 F.2d 1145, 1152 (9th Cir. 1989)); *Quirarte v. United Domestic Workers AFSCME Loc. 3930*, 438 F. Supp. 3d 1108, 1115-16 (S.D. Cal. 2020) ("The fact that the State performs a ministerial function of collecting Plaintiffs' dues deductions does not mean that Plaintiffs' alleged harm is the result of state action." (citation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

Plaintiffs rely on *Yates*, but it does not support their position. *Yates* distinguished *Lugar* and determined that the union's alleged forgery of the plaintiff's authorization form could not "logically support" the plaintiff's due process claim under § 1983 because the alleged "intentional misuse of [the] procedure" provided by statute did not constitute state action. 466 F. Supp. 3d at 1204. *Yates* also held that that there was no joint action between the union and the state because "Yates does not allege that the State knowingly participated in WFSE's misconduct." *Id.* For these reasons, *Yates* concluded that the plaintiff's "claims that the State passed a statute with insufficient safeguards against its own violation and unknowingly accepted an allegedly forged signature" did not render the union's behavior state action. *Id.*

Even if Plaintiffs could satisfy the first prong in *Lugar*, the allegations in the Complaint are insufficient to establish that EAA is fairly described as a state actor. "The Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation omitted) (alteration in original).

Plaintiffs rely on the joint action and governmental nexus tests. Dkt. 33 at 20. "'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, . . . or otherwise has 'so far insinuated itself into a position of interdependence with [the non-governmental party] that it must be recognized as a joint participant in the challenged activity.'" *Ohno,* 723 F.3d at 996 (citations omitted).

*Belgau* precludes the acceptance of Plaintiffs' arguments. *Belgau* explained that "'[t]he decision' to deduct dues from Employees' payrolls was 'made by concededly private parties,' and depended on 'judgments made by private parties without standards established by the State.'" 975 F.3d at 947 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)). The Ninth Circuit determined that "[t]he state 'cannot be said to provide "significant assistance" to the underlying acts that [Employees] contends constituted the core violation of its First Amendment rights' if the 'law requires' Washington to enforce the decisions of others 'without inquiry into the merits' of the agreement." *Id.* at 947-48 (quoting *Ohno*, 723 F.3d at 996-97) (alterations in original); *see also Wright*, 48 F.4th at 1123 (quoting *Belgau*, 975 F.3d at 948) ("The State's 'mandatory indifference' to whether Wright's authorization was authentic 'refutes any characterization' of SEIU as a joint actor with the State.").

The same analysis applies under California law because the City does "not have a role in the alleged scheme apart from the ministerial processing of requests." *Espinoza*, 562 F. Supp. 3d at 913; *Semerjyan*, 489 F. Supp. 3d at 1058 ("Plaintiff does not allege that the State participated in the forgery of her card or knew the Union fraudulently represented her membership status."). Further, as *Belgau* explained, "providing a 'machinery' for implementing the private agreement by performing an administrative task does not render" the City and EAA joint actors. 975 F.3d at 948; *see id.* ("At best, Washington's role in the allegedly unconstitutional conduct was ministerial processing of payroll deductions pursuant to Employees' authorizations."). Nor is there an alleged "'symbiotic relationship' of mutual benefit and 'substantial degree of cooperative action'" between the two defendants. *Id.* (quoting *Sawyer v. Johansen*, 103 F.3d 140, 140 (9th Cir. 1996)).

Under the governmental nexus test, "a private party acts under color of state law if 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

action of the latter may be fairly treated as that of the State itself.'" *Ohno*, 723 F.3d at 995 n.13 (quoting *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991)). Although this is "[a]rguably the most vague of the four approaches," *Kirtley v. Rainey*, 326 F.3d 1088, 1094 (9th Cir. 2003), the analysis in *Belgau* still applies. *See also Wright*, 48 F.4th at 1121 n.6 (quoting *Ohno*, 723 F.3d at 996 n.13) (declining to address the governmental nexus test in part because the public function and joint action tests "largely subsume" the governmental nexus test).

For the foregoing reasons, there is not a sufficiently close nexus between the actions of EAA and the City. "A merely contractual relationship between the government and the non-governmental party does not support joint action . . . ." *Belgau*, 975 F.3d at 948. Moreover, the City "received no benefits as a passthrough for the dues collection," and EAA and the City "oppose[] one another at the collective bargaining table." *Id.* (citing *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988)). Other district courts in California have adopted this analysis. *See Quirarte*, 438 F. Supp. 3d at 1117 ("As previously stated, the Court is not convinced that the deduction of dues pursuant to the membership agreements lends to a finding of a sufficiently close nexus between the Union and the State and therefore the governmental nexus test has also not been met."); *Quezambra v. United Domestic Workers of Am. AFSCME Local 3930*, 445 F. Supp. 3d 695, 704-05 (C.D. Cal. 2020) ( "there is no sufficiently close nexus" in similar circumstances); *Hubbard v. SEIU Local 2015*, 552 F. Supp. 3d 955, 960 (E.D. Cal. 2021) ("Under analogous circumstances, courts within the Ninth Circuit have repeatedly found a union's authorization of dues, even if fraudulently made, does not transform the union's exclusively private act into state action under any of the four conceivable tests . . . ."); *Semerjyan*, 489 F. Supp. 3d at 1057-59 (concluding union was not state actor in similar circumstances); *Espinoza*, 562 F. Supp. 3d at 913, 2022 WL 819741, at *4-5 (same).

Plaintiffs next argue that the state action analysis is controlled not by *Belgau*, but by *Janus v. Am. Fed'n of State, Cnty, and Mun. Emp.'s, Council 31*, 138 S. Ct. 2448 (2018) ("*Janus I*"), and the subsequent decision by the Seventh Circuit following the remand of the action. *Janus v. Am. Fed'n of State, Cnty, and Mun. Emp.'s, Council 31*, 942 F.3d 352 (7th Cir. 2019) ("*Janus II*"). Dkt. 33 at 22-23. Plaintiffs argue that "the underlying state action is identical to that in *Janus* [*I*]" and that the Seventh Circuit's analysis in *Janus II* "is also directly on point." *Id.* at 22.

Plaintiffs' arguments are unpersuasive. As the Ninth Circuit explained in *Belgau*, *Janus I* held that "the practice of automatically deducting agency fees from nonmembers violates the First Amendment." *Belgau*, 975 F.3d at 952; *see also Janus II*, 942 F.3d at 354 ("In 2018, the Supreme Court reversed its prior position and held that compulsory fair-share or agency fee arrangements impermissibly infringe on employees' First Amendment rights."). *Janus I* invalidated state laws that required a public employee, who was not a member of a union, to subsidize unions through "agency fees." 138 S. Ct. at 2459-60. Agency fees are not at issue here. *See Janus I*, 138 S. Ct. at 2485 n.27 ("States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions.").[3]

---

[3] Agency fees are mandatory ones that a union collects from all employees it represents, including those who have declined to join the union. *Janus I*, 138 S. Ct. at 2460. Non-member employees generally "are not assessed full union dues" but are required to pay "a percentage of the union dues." *Id.* This is also called an "agency shop" arrangement, which is an "agreement[] under which employees could be required either to be union members or to contribute to the costs of representation" by the union. *Janus II*, 942 F.3d at 354. *Janus I* held that "public-sector agency-shop arrangements violate the First Amendment." 138 S. Ct. at 2478; *see Belgau*, 975 F.3d at 944

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

Further, the analysis in *Janus II* of what constitutes state action does not apply here. *Janus II* determined that the "agency-fee arrangement" under Illinois law caused the conduct of the union to be state action. 942 F.3d at 361. As *Belgau* explained, the Ninth Circuit's "conclusion that state action is absent in the deduction and the transfer of union dues does not implicate the Seventh Circuit's analysis on the collection of agency fees." 975 F.3d at 948 n.3 (citing *Janus II*, 942 F.3d at 361). This action, like *Belgau*, concerns the deduction and transfer of union dues, not agency fees.[4]

Plaintiffs argue that *Belgau* is distinguishable because Bourque alleges that she neither expressly authorized the wage deductions, nor signed any agreement with EAA. *Wright* rejected this argument. There, the Ninth Circuit concluded that whether an employee has agreed to join a union is "inconsequential" because "[t]he joint action test examines the government's action, not the status of the underlying agreement." *Wright*, 48 F.4th at 1124 (citing *Ohno*, 723 F.3d at 996). Thus, "[w]hile the factual circumstances of . . . *Belgau* may be different, the actions that Washington and Oregon took are the same: processing authorizations for dues deductions and remitting the payments to the union." *Id.* (citing *Belgau*, 975 F.3d at 945).

In this action, as in *Belgau* and *Wright*, the state's "role in the allegedly unconstitutional conduct was ministerial processing of payroll deductions pursuant to" the union's representation that the employee had assented to them. *See Belgau*, 975 F.3d at 948. The employees in *Belgau* argued that their private agreement with the union was invalid after *Janus I* and sought to revoke their deduction authorization effective immediately. The employee in *Wright* never joined the union and alleged that the union forged her membership card. *Wright*, 48 F.4th at 1116. Here, Plaintiffs argue that, despite their express revocation, or rejection of any authorization for deductions from their wages, EAA continued to represent to the City that such deductions were authorized. There is not a material distinction between the conduct of the union at issue in each of these cases because the underlying rule is the same -- the state entity is to have "mandatory indifference to the underlying merits of the authorization." *Belgau*, 975 F.3d at 948 (citation and internal quotation marks omitted). Thus, as in *Belgau* and *Wright*, EAA is not a joint actor with the state entity. *See id.*; *Wright*, 48 F.4th at 1124.

Because the Complaint fails to allege state action, Plaintiffs' § 1983 claims against EAA are not viable. EAA's Motion to Dismiss is **GRANTED** as to Plaintiffs' § 1983 claims.

        (2)    <u>Claims Against the City</u>

---

("*Janus* repudiated agency fees imposed on nonmembers, not union dues collected from members, and left intact 'labor-relations systems exactly as they are.'" (quoting *Janus*, 138 S. Ct. at 2485 n.27)). Cal. Gov't Code § 1157.12 does not authorize either agency fees or an agency shop arrangement. Consequently, Plaintiffs claim that the union misrepresented to the City that Plaintiffs had authorized the deduction of dues from their wages. *Cf. Belgau*, 975 F.3d at 948 ("Neither are we swayed by Employees' attempt to fill the state-action gap by equating authorized dues deduction with compelled agency fees."). Thus, agency fees are not at issue.

[4] Following the Motions hearing, Plaintiffs filed a notice of supplemental authority in which they cited *Warren v. Fraternal Ord. of Police, Ohio Lab. Council, Inc.*, 593 F. Supp. 3d 666 (N.D. Ohio 2022). Dkt. 45. *Warren* is distinguishable for the same reasons that have been stated as to *Janus II*. It concerns agency fees, not member dues. *Warren*, 593 F. Supp. 3d at 675-76 (the union acted under color of state law when it deducted agency fees from the plaintiff's wages pursuant to an unconstitutional agency-shop arrangement).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

The City argues that Plaintiffs' claims are insufficiently alleged because the claimed injuries were caused by private action and the City does not have liability under § 1983 by complying with state law. Dkt. 30 at 16-17. Plaintiffs argue the City is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Dkt. 33 at 23-28.

As explained above, the core of Plaintiffs' alleged harm is EAA's failure to notify the City that Plaintiffs had withdrawn or changed their authorization of wage deductions. *See Belgau*, 975 F.3d at 947. Thus, the City's role in the alleged harm was merely "ministerial processing of payroll deductions pursuant to" EAA's representation that Plaintiffs had authorized the deductions. *See id.* at 948. Other district courts have concluded that there is not a viable *Monell* claim under similar circumstances. Thus, "[w]hen a municipality exercises no discretion and merely complies with a mandatory state law, the constitutional violation was not caused by an official policy of the municipality." *Aliser*, 419 F. Supp. 3d at 1165 (addressing Cal. Gov't Code § 1157.12(b)); *see Quezambra*, 445 F. Supp. 3d at 706 (same); *cf. Espinoza*, 562 F. Supp. 3d at 913, 2022 WL 819741 at *5 ("State Defendants' actions constitute the ministerial processing of authorized deductions . . . which does not amount to state action.").

This analysis is persuasive. Under California law, the City was required to process EAA's request for wage deductions, *see* Cal. Gov't Code §§ 1152, 1157.3, 1157.12, and "rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed," Cal. Gov't Code § 1157.12. Plaintiffs' alleged harms do not establish either that the City applied a policy other than what was required under state law, or that the City's actions were the moving force that caused the alleged harms. "Regardless of whether it violates the Constitution for public employers to rely on unions for information regarding dues deductions, the plaintiffs have not adequately alleged that the [City] [is] liable for this conduct under *Monell* . . . ." *Aliser*, 419 F. Supp. 3d at 1165; *see Quezambra*, 445 F. Supp. 3d at 706 ("As the court explained in *Aliser*, 'the general decision to contract with [the Union] ... did not "cause" the specific allegedly unconstitutional' compelled speech 'that forms the basis of the claim.'" (quoting *Aliser*, 419 F. Supp. 3d at 1165)).[5]

For the foregoing reasons, the Complaint fails sufficiently to allege § 1983 claims against the City. The City's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim is therefore **GRANTED** as to Plaintiffs' § 1983 claims.

    4.    Leave to Amend

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens*, 244 F.3d at 712, leave to amend is inappropriate in circumstances where an amendment would be futile. *See Foman*, 371 U.S. at 182; *Allen*, 911 F.2d at 374.

---

[5] Following the Motions hearing, Plaintiffs also filed a notice of supplemental authority citing *Bright v. State of Oregon et al.*, No. 3:23-cv-00320-MO (D. Ore. Mar. 8, 2023) (unpublished). Dkt. 48. In *Bright*, the plaintiff's request for a temporary restraining order against the state was granted because the state continued to deduct union dues from her wages without her authorization. *Bright*, No. 3:23-cv-00320-MO at Dkt. 8. The decision concluded that the plaintiff was likely to succeed on the merits of her First Amendment claim for the purpose of injunctive relief, but did not address whether the state's mandatory processing of payroll deductions constituted an official policy under *Monell*. Therefore, the decision is not persuasive authority in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-04006 JAK (PVCx) | Date | |
|---|---|---|---|
| Title | Camille Bourque, et al. v. Engineers and Architects Association, et al. | | |

Any amendment to the Complaint would be futile. *Foman*, 371 U.S. at 182. For the reasons discussed in this Order, Plaintiffs' claims against the Attorney General are barred by the Eleventh Amendment. There is no reasonable basis offered by Plaintiffs as to how they could amend the Complaint to state a claim against the Attorney General that alleges a sufficiently direct connection between the Attorney General and Cal. Gov't Code § 1157.12. Similarly, Morejon lacks standing to seek prospective relief and Bourque's claims for prospective relief are moot. Plaintiffs' claims for compensatory damages for the wages allegedly deducted without their authorization are also moot. Nor can Plaintiffs allege either that EAA is a state actor, or a viable basis for a *Monell* claim against the City.

Plaintiffs have sought leave to amend the Complaint to convert this to a class action proceeding. They contend that this would resolve the issue of mootness in that at least some members of the putative class may not have been reimbursed and deductions from pay checks may still be in place as to others Dkt. 33 at 42. Plaintiffs cite no authority to support allowing such an amendment in which class action allegations would be presented for the first time. Other cases cited by Plaintiffs, e.g., *Pitts*, involved putative class action complaints. *See Pitts*, 653 F.3d at 1084, 1090; *see id.* at 1091-92 ("[W]e hold that an unaccepted Rule 68 offer of judgment—for the full amount of the named plaintiff's individual claim and made before the named plaintiff files a motion for class certification—does not moot *a class action*.") (emphasis added). Nor have Plaintiffs established why they would be adequate class representatives under Fed. R. Civ. P. 23 given that they have been reimbursed and are no longer subject to any further deductions of dues from their pay checks.

Further, even assuming these Plaintiffs or new ones were to present class action allegations, amendment would still be futile because the harm alleged in the Complaint "cannot be legally attributed to [Defendants]." *Espinoza*, 562 F. Supp. at 911, (denying leave to amend to add class allegations). The same issues concerning the Eleventh Amendment, state action, and *Monell* would apply to any new plaintiffs.

**IV.    Conclusion**

For the reasons stated in this Order, the Motions are **GRANTED**. The Complaint is dismissed with prejudice, i.e. without leave to amend. Within 14 days from the issuance of this Order, after meeting and conferring with Plaintiffs' counsel to seek to reach agreement as to the form of a proposed judgment, Defendants shall lodge a proposed judgment. If Plaintiffs have agreed to its form, the proposed judgment shall include the corresponding statement and signature. If Plaintiffs object to the form of the proposed judgment, they shall timely file such objection(s) consistent with the Local Rules.

**IT IS SO ORDERED.**

| | : | |
|---|---|---|
| Initials of Preparer | pk | |